HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JOANN S. HATCH, | CASE NO. C14-5164 RBL |
| Plaintiff, | ORDER GRANTING SUMMARY JUDGMENT |
| v. | |
| PATRICK R. DONAHOE, Postmaster General, United States Postal Service, | DKT. #21 |
| Defendant. | |

THIS MATTER is before the Court on Defendant Postmaster General's Motion for Summary Judgment [Dkt. #21]. Plaintiff Hatch is a longtime clerk for the United States Postal Service who suffers from relapsing-remitting multiple sclerosis. She claims the Postal Service violated the Americans with Disabilities Act and the Rehabilitation Act of 1973 by adhering to a system that, because of her disability, denied her full employment opportunities between July 2010 and August 2013 and by retaliating against her for requesting a reasonable accommodation and filing grievances.[1] *See* 42 U.S.C. § 12101 *et seq.*; *see also* 29 U.S.C. § 701 *et seq.* The Postal Service argues that it employed Hatch less than full-time because an audit revealed it was

---

[1] Hatch abandons her age discrimination and hostile work environment claims. [Dkt. #25 at 25]. Those claims are DISMISSED with prejudice.

overstaffed, so it reallocated work; and it was contractually obligated to first provide full-time work to regular employees, which Hatch was not.

The Postal Service operates under a collective bargaining agreement with the American Postal Workers Union. (Whitehead Dec., Ex. I, CBA). Under the CBA, "unassigned" full-time regular employees do not have permanent assignments. Instead, they work on various tasks identified by management. To obtain a permanent assignment, an unassigned employee must be the most senior bidder qualified for an available position. Any ill or injured employee may request light-duty work. Full-time work is not guaranteed to those on light-duty status, and no work may be given to the detriment of an assigned full-time regular employee. (Whitehead Dec., Ex. I, CBA at 13.3.B, 13.4.C.). Any disabled employee may request a reasonable accommodation. When addressing these requests, the District's Reasonable Accommodation Committee need not eliminate a job's essential functions, such as its start time.

Hatch first notified the Vancouver Post Office of her MS in 2004. In 2005, she became an unassigned regular employee. In March 2010, she requested light-duty work. (Whitehead Dec., Ex. E, Hatch Letter). Her physician recommended that her job functions be modified so that she would only need to intermittently stand and walk no more than two hours per shift, intermittently lift no more than twenty-five pounds, work in an air conditioned environment during the summer, and not work variable shifts or start before 7 am. (Whitehead Dec., Ex. F and AA, Physician Letters). Hatch met with the DRAC in July 2010. It determined that she is disabled under the Rehabilitation Act and sought to reasonably accommodate her MS.

Also in July 2010, the Postal Service conducted a Function Four audit. The auditors concluded that the Vancouver office was overstaffed by approximately five clerks, and so recommended staffing reductions and scheduling changes. The office abolished some positions

1   and eliminated part-time work. For the next three years, Hatch worked intermittently, until the

2   Postal Service found her an assigned position as a PM registry clerk, which she holds today.

3        Hatch sues the Postal Service arguing that during that time, it failed to reasonably

4   accommodate her MS, treated her differently than other non-disabled employees, and retaliated

5   against her for requesting accommodations for her MS and filing Equal Employment

6   Opportunity complaints. The Postal Service argues that it did not discriminate against Hatch;

7   rather, the CBA required it to give full-time work to regular employees before those on light-

8   duty status, and the Vancouver Office did not have enough productive work to go around. Hatch

9   argues that she can survive the Postal Service's motion for summary judgment, because its

10  proffered explanation for how it treated her is merely pretext for discrimination.

11       Summary judgment is proper "if the pleadings, the discovery and disclosure materials on

12  file, and any affidavits show that there is no genuine issue as to any material fact and that the

13  movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether

14  an issue of fact exists, the Court must view all evidence in the light most favorable to the

15  nonmoving party and draw all reasonable inferences in that party's favor. *See Anderson v.*

16  *Liberty Lobby, Inc*., 477 U.S. 242, 248–50, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986); *see also*

17  *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists

18  where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *See*

19  *Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence presents a sufficient

20  disagreement to require submission to a jury or whether it is so one-sided that one party must

21  prevail as a matter of law." *Id*. at 251–52. The moving party bears the initial burden of showing

22  no evidence exists that supports an element essential to the nonmovant's claim. *See Celotex*

23  *Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant

24

1   has met this burden, the nonmoving party then must show the existence of a genuine issue for

2   trial. *See Anderson*, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a

3   genuine issue of material fact, "the moving party is entitled to judgment as a matter of law."

4   *Celotex*, 477 U.S. at 323–24.

5   　　The ADA prohibits employers from discriminating against their employees by denying

6   them reasonable accommodations or by adhering to practices that produce disparate impacts

7   based on disability. *See* 42 U.S.C. § 12112. The Rehabilitation Act and retaliation claims

8   analysis apply the same standards as the ADA. 29 U.S.C. § 794(d); *see also Scott v. Mabus*, 618

9   Fed. App'x 897, 901 (9th Cir. 2015) (citing *Coons v. Sec'y of U.S. Dep't of Treasury*, 383 F.3d

10  879, 887 (9th Cir. 2004)).

11  　　The ultimate question before the Court is whether Hatch has demonstrated that the Postal

12  Service's proffered nondiscriminatory reason for her treatment—that the CBA required it to first

13  give full-time work to regular employees not on light-duty status—is merely a pretext for

14  discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36

15  L.Ed.2d 668 (1973) (explaining that the complainant bears the initial burden of establishing a

16  prima facie case of discrimination; the burden shifts to the employer to articulate a legitimate,

17  nondiscriminatory reason for the employee's rejection; and the complainant bears the ultimate

18  burden of showing employer's proffered reason was pretextual); *see also U.S. Airways, Inc. v.*

19  *Barnett*, 535 U.S. 391, 406, 122 S.Ct. 1516, 252 L.Ed.2d 589 (2002) (The ADA ordinarily does

20  not require an employer to assign a disabled employee to a position that would violate its

21  established seniority system when making a reasonable accommodation.); *Coghlan v. American*

22  *Seafoods Co. LLC*, 413 F.3d 1090, 1093 (9th Cir. 2005) (citing *St. Mary's Honor Center v.*

23

24

1  *Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)) (disparate treatment);

2  *Hardage v. CBS Broadcasting Inc.*, 427 F.3d 1177, 1188 (9th Cir. 2005) (retaliation).

3      A plaintiff may meet the burden of showing pretext using either direct or circumstantial

4  evidence. *See Coghlan*, 413 F.3d at 1094–95. Direct evidence, if believed, proves discriminatory

5  animus without the need for inference or presumption. *See id.* at 1095. Circumstantial evidence

6  points to bias or demonstrates the employer's proffered explanation is unworthy of credence. *See*

7  *id*. Circumstantial evidence must be specific and substantial to defeat the employer's motion for

8  summary judgment. *See id.* (citing *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1222 (9th Cir.

9  1998)). Hatch argues that she can meet this burden in three ways.

10      First, she argues her supervisor directed her to request light duty status, and the DRAC

11  unnecessarily evaluated her ability to perform in a position before assigning it to her and failed to

12  timely communicate with her.

13      Hatch's allegation that her supervisor instructed her to request light-duty status cannot

14  overcome the Postal Service's showing: a letter from Hatch to her supervisor requesting light-

15  duty work, which she described as a "win/win" for herself and the Postal Service. (Whitehead

16  Dec., Ex. E, Hatch Letter). The DRAC needed to evaluate Hatch's performance to ensure it

17  could reasonably accommodate her MS without compromising an essential function of the job.

18  By determining that it could not change a position's start time, the Postal Service did not

19  discriminate against her. Communicative lapses alone do not suggest discriminatory animus.

20      Second, Hatch argues a letter the Vancouver Postmaster, Sara Lovendahl, sent her

21  explaining that she *may* be eligible for optional or disability retirement or resignation is direct

22  evidence of disparate treatment. She also argues she was treated differently than three other

23  employees: Jeffrey Ledbetter, Sue Glaser, and Matt Leighty. She claims the Postal Service's

24

1  explanation for why it lessened her workload is unworthy of credence because factual disputes

2  exist and it failed to show that other factual disputes do not exist.

3      Lovendahl's letter outlined options available to Hatch, including a more expansive

4  geographic search for available positions. (Hatch Dec., Ex. 5, Lovendahl Letter). It contains no

5  evidence of discriminatory animus, and did not require her to change her employment status.

6  Also, unlike Hatch, Ledbetter was not on light-duty status and Glaser had an assigned position;

7  the CBA required the Postal Service to give them full-time work. Conversely, the Postal Service

8  produced evidence that Leighty and Hatch were treated similarly: both had their hours reduced

9  when productive work was unavailable. (Whitehead Dec., Ex. J, at 12–13). Hatch's reasons why

10  the Court should discredit the Postal Service's nondiscriminatory explanation are not sufficient

11  and substantive enough to demonstrate pretext. *See Coghlan*, 413 F.3d at 1095.

12      Third, Hatch attempts to show that the Postal Service's reasons are pretextual by arguing

13  that the Postal Service suddenly started treating her antagonistically in March 2010, such as by

14  threatening (but not punishing) her with criminal prosecution for photocopying certified-mail

15  second-notices and using her light-duty status to justify reducing her work. She claims this

16  treatment was in retaliation for her requesting the Postal Service accommodate her MS and for

17  two grievances she filed.

18      Only non-trivial employment actions that would deter reasonable employees from

19  complaining about discriminatory acts constitute actionable retaliation. *See Hardage*, 427 F.3d at

20  1189. Hatch's interpretation of events, without more, cannot overcome the Postal Service's

21  explanation for its treatment of her: the audit demonstrated that the Postal Service did not have

22  sufficient work to assign her because it needed to first staff full-time regulars.

23

24

Hatch has failed to provide sufficient evidence of pretext on any of these claims.[2] She has not raised a genuine issue of material fact regarding the Postal Service's nondiscriminatory reason for lessening her hours between July 2010 and August 2013. Accordingly, the Postal Service's Motion for Summary Judgment [Dkt. #21] is GRANTED, and these claims against it are DISMISSED with prejudice.

IT IS SO ORDERED.

Dated this 12th day of January, 2016.

Ronald B. Leighton
United States District Judge

---

[2] Hatch argues that the Court should deny summary judgment on four claims of discrimination the Postal Service failed to address in its motion: whether the Postal Service violated the Rehabilitation Act of 1973 by (1) classifying her based on her MS in a way that adversely affected her opportunities, (2) participating in a contract that subjected her to discrimination based on her MS, (3) utilizing criteria or methods of administration that discriminated against her based on her MS, and (4) using qualification standards that excluded her from positions for which she was qualified. The Court is inclined to grant summary judgment sua sponte. Hatch may file a surreply within ten days of this Order.