HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JOANN S HATCH,<br><br>    Plaintiff,<br><br>    v.<br><br>PATRICK R DONAHOE, Postmaster General, United States Postal Service, et al.,<br><br>    Defendants. | CASE NO. C14-5164 RBL<br><br>ORDER GRANTING DEFENDANTS' MOTION AND DISMISSING PLAINTIFF'S REMAINING CLAIMS<br><br>DKT. #21 |

THIS MATTER comes before the Court on Defendant Postmaster General's Motion for Summary Judgment [Dkt. #21]. The Court partially granted the Postmaster General's motion on January 12, 2016 [Dkt. #33], but it did not consider Plaintiff Joann Hatch's unaddressed claims.[1] Instead, the Court gave her an opportunity to file a surreply [Dkt. #38].

---

[1] Hatch argued that the Court should deny summary judgment on four claims of discrimination that the Postal Service failed to address: whether the Postal Service violated the Rehabilitation Act of 1973 by (1) classifying her based on her MS in a way that adversely affected her opportunities, (2) participating in a contract that subjected her to discrimination based on her MS, (3) utilizing criteria or methods of administration that discriminated against her based on her MS, and (4) using qualification standards that excluded her from positions for which she was qualified. [Dkt. #25]. She termed these claims "disparate impact claims." Hatch now argues that the unaddressed claims are violations of the Americans with Disabilities Act

1       Hatch was a United States Postal Service unassigned regular employee on light-duty

2 status. She suffers from relapsing-remitting multiple sclerosis. At bottom, she claims the Postal

3 Service violated the ADA and the Rehabilitation Act by placing her on light-duty status, which

4 *had the effect of discriminating against her on the basis of her disability* because it allowed the

5 Postal Service to reduce her hours under its collective bargaining agreement. The Postal Service

6 argues that (1) Hatch failed to administratively exhaust her claims; and (2) its light-duty program

7 is not discriminatory, because disabled and non-disabled employees may (voluntarily) request

8 light-duty work, and it does not guarantee anyone full-time work. Hatch argues that she raised

9 these claims before an administrative law judge. She also argues that she only requested light-

10 duty status because the Postal Service told her she needed to do so in order to receive a

11 reasonable accommodation for her MS, and that by misleading her, the Postal Service was able

12 to reduce her hours.

13                                   **DISCUSSION**

14 **I.      Standard of Review.**

15       Summary judgment is proper "if the pleadings, the discovery and disclosure materials on

16 file, and any affidavits show that there is no genuine issue as to any material fact and that the

17 movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether

18 an issue of fact exists, the Court must view all evidence in the light most favorable to the

19 nonmoving party and draw all reasonable inferences in that party's favor. *See Anderson v.*

20 *Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *see also Bagdadi v. Nazar*, 84 F.3d 1194,

21

---

22

23 under 42 U.S.C. § 12112(b)(1)–(6). She asserts that these claims are sometimes referred to as "discriminatory impact claims," although they are more accurately described as "adverse effect claims." The Court will set nomenclature aside and will consider the substance of her four

24 remaining claims.

1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *See Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251–52. The moving party bears the initial burden of showing no evidence exists that supports an element essential to the nonmovant's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then must show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323–24.

## II. Hatch Administratively Exhausted her Claims.

The Postal Service argues Hatch failed to administratively exhaust her remaining claims because she advanced disparate *treatment*, not disparate *impact*, theories before the EEOC, and these theories are not reasonably related. Hatch argues that her claims fell within the EEOC's investigation, so were administratively exhausted, and therefore not barred from consideration.

A federal employee cannot bring a discrimination claim unless she has exhausted her administrative remedies. *See Brown v. GSA*, 425 U.S. 820, 832 (1976). To do so, she must initiate contact with the EEOC within forty-five days of the alleged discriminatory act's occurrence and must file a claim with the offending agency. *See Leorna v. United States Dep't of State*, 105 F.3d 548, 550 (9th Cir. 1997); *Johnson v. United States Treasury Dep't*, 27 F.3d 415, 416 (9th Cir.1994); *Boyd v. Unites States Postal Serv.*, 752 F.2d 410, 414 (9th Cir.1985). The employer bears the burden of proving that its employee failed to administratively exhaust her

1 claim. *See Kraus v. Presidio Trust Facilities Div./ Residential Mgmt. Branch*, 572 F.3d 1039,

2 1046 n.7 (9th Cir. 2009).

3 A court may consider a claim that was not included in an EEOC charge if it falls within

4 an EEOC investigation "reasonably … expected to grow out of" the discrimination charge or if it

5 actually fell within the scope of the EEOC's investigation. *See Rollins v. Traylor Bros.*, No. C14-

6 1414 JCC, 2016 WL 258523, at *14 (W.D. Wash. Jan. 21, 2016) (citing *E.E.O.C. v. Farmer*

7 *Bros. Co.*, 31 F.3d 891, 899 (9th Cir. 1994)). "Such claims may also be considered if they are

8 like or reasonably related to the allegations contained in the EEOC charge." *See id.* (internal

9 punctuation omitted) (citing *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1100 (9th Cir. 2002)).

10 Hatch's EEO discrimination complaint contained similar factual allegations as does her

11 complaint here. While she did not explicitly discuss the light-duty program's or the CBA's

12 effects, they were discussed during the EEOC's investigation. The Postal Service has not shown

13 Hatch failed to administratively exhaust her claims.

14 **III.    The Postal Service's Light-Duty Program is Not Discriminatory.**

15 The Postal Service argues that its light-duty program is not discriminatory because it

16 affects disabled and non-disabled employees equally. Hatch argues that if she had not needed a

17 reasonable accommodation, the Postal Service would not have directed her to request light-duty

18 work, and she would not have been subjected to a reduction in her hours.

19 The Postal Service's light-duty program is distinct from its process for accommodating

20 disabilities. Any injured or ill employee may voluntarily request light duty work from her local

21 postmaster under the CBA. Full-time work is not guaranteed, and no work may be given to a

22 full-time regular employee's detriment. Disability determinations are made by an entirely

23 different entity, the District's Reasonable Accommodation Committee. The Committee is

24

1  comprised of Postal Service managers, human resources personnel, labor representatives, and
2  sometimes medical personnel. It (and not the local postmaster) considers whether an employee is
3  disabled under the Rehabilitation Act. A disabled employee may ask this Committee to
4  reasonably accommodate her disability by adjusting non-essential aspects of her position.
5       Hatch acknowledged these differing processes in her March 2010 letter to Sara
6  Lovendahl, the Vancouver Postmaster General. She requested both a light-duty assignment *and* a
7  reasonable accommodation for her MS:

> It has become necessary for me to request a light duty assignment per Article 13 of the National Agreement within my restrictions as indicated in the enclosed letter from my physician and copies of previously submitted documentation. I am also requesting reasonable accommodation.
>
> I am seeking to create a win/win situation by providing labor the U.S. Postal Service needs while taking essential steps to ensure stability of my health.

12  *See* Dkt. #22, Whitehead Dec., Ex. E. Hatch's letter undermines her claim that she sought light-
13  duty status as a reasonable accommodation; she clearly made a distinction between them. She
14  understood that the Committee evaluated reasonable accommodation requests. Her letter also
15  suggests that she had sufficient familiarity with the light-duty provisions of the "the National
16  Agreement" (the CBA) to understand that the program does not guarantee full-time work and is
17  voluntary for all employees, whether or not disabled.
18       Even if Lovendahl did "direct" her to request light-duty work, however, the light-duty
19  program could not have *had the effect of discriminating against her on the basis of her disability*,
20  because the Postal Service treated her the same way as every other unassigned employee on
21  light-duty status. It reduced her (and their) hours after an audit revealed the Postal Service was
22  overstaffed, not because of her disability. There is no evidence to the contrary.

**CONCLUSION**

The Postal Service did not discriminate against Hatch. Accordingly, its Motion [Dkt. #21] is GRANTED. Hatch's remaining claims are DISMISSED with prejudice.

IT IS SO ORDERED.

Dated this 26th day of February, 2016.

_____
Ronald B. Leighton
United States District Judge